IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Harry A. Batten, | ) |
|         Plaintiff, | ) Civil Action No. 2:04-2419-CWH |
| vs. | ) |
| | ) ORDER |
| Continental Casualty Company, D/B/A CNA | ) |
|         Defendant. | ) |

**FINDINGS OF FACTS AND CONCLUSIONS OF LAW**

The plaintiff commenced this ERISA action under, 29 U.S.C. § 1132(a)(1)(B), to recover long term disability benefits allegedly due to him under the terms of a group benefit plan issued and administered by the defendant. On September 2, 2005, the defendant filed a motion for summary judgment. On September 21, 2005, the plaintiff opposed the motion, and on September 30, 2005, the defendant replied. In lieu of a summary judgment standard, the parties agreed that the Court should conduct a bench trial to resolve this matter. The parties filed the plaintiff's administrative record under seal. The administrative record includes the medical records and vocational information used by the defendant to make the benefit determination. The parties have agreed that the Court should only consider evidence derived from the administrative record. The Court heard the parties' arguments on November 21, 2005. Upon review of the administrative record and briefs submitted by the parties and pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court makes the following findings of facts and conclusions of law.

**Finding of Facts**

**1.** The plaintiff was employed by Blue Circle Cement (now known as Lafarge North America) as a heavy equipment operator. On July 5, 2000, while the plaintiff was operating a

track hoe, the seat collapsed and the plaintiff injured his back. The plaintiff continued to work. The pain in the plaintiff's back, however, persisted and he stopped working on November 24, 2000.[1]

**2.** Dr. Joseph M. Marzluff, a neurological surgeon, diagnosed the plaintiff with lumbar spondylosis and degenerative spondylolisthesis (L3-4) and general spondylolisthesis (L4-5). On December 8, 2000, Dr. Marzluff performed surgery on the plaintiff to correct the condition. Three months later, Dr. Marzluff examined the plaintiff and reported that the surgery went well. On May 23, 2001, Dr. Marzluff examined the plaintiff and again reported that the plaintiff's back was doing well.

**3**. In June, 2001, however, Dr. Marzluff reported that the plaintiff began complaining of back, neck, and leg pain. Dr. Marzluff administered three steroid injections between the months of November and December, 2001 in an attempt to treat the plaintiff's pain.

**4.** The plaintiff's employer submitted a claim for long term disability benefits on February 12, 2002. The plan requires objective medical evidence to the prove a disability. The plan defines disability as follows:

Disability means that during the Elimination period and the following 24 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that *You* are:

1. Continuously unable to perform the Material and Substantial Duties of *Your* Regular Occupation; and
2. Not working for wages in any occupation for which *You* are or become qualified by education, training, or experience.

After the Monthly benefit has been payable for 24 months, "Disability" means that Injury

---

[1] Because the injury occurred in the course of his employment, the plaintiff received worker's compensation benefits. On February 22, 2002, Dr. Marzluff stated that the plaintiff had reached maximum medical improvement and rated the impairment to the plaintiff's back at 30%.

or Sickness causes physical or mental impairment to such a degree of severity that *You* are:

    1.    Continuously unable to engage in any occupation for which *You* are or become qualified by education, training, or experience; and

    2.    Not working for wages in any occupation for which *You* are or become qualified by education, training, or experience.

**5.** On May 7, 2002, the defendant approved the plaintiff's claim for benefits during the "own occupation" period but reduced benefits by the amount of worker's compensation the plaintiff received.

**6.** On May 28, 2002, the defendant faxed Dr. Marzluff a "Functional Assessment Tool," which requested the following information: how long is [the plaintiff] able to do the following activities: standing, walking, sitting, and lifting (10-20 pounds, 20-30 pounds, 30-40 pounds, over 40). On June 5, 2002, Dr. Marzluff responded and stated that the plaintiff could stand for one hour, walk for one hour, sit for two hours, and lift 10-20 pounds.

**7.** On June 27, 2002, the defendant advised the plaintiff that his current medical and vocational file included the above mentioned restrictions by Dr. Marzluff and a phone interview with the plaintiff when he reported that he could drive short distances, walk for short periods of time and was able to sit. The defendant further advised the plaintiff that based on the level of functionality provided by this evidence, the defendant's vocational case manager had determined that the plaintiff was capable of performing alternative work such as: ordering clerk, customer service telephonic (utilities), or front desk person. The defendant informed the plaintiff that benefits would end on May 23, 2003, and to change this decision, the plaintiff would need to forward new medical or vocational information.

**8.** In a letter dated March 17, 2003, the defendant again advised the plaintiff that based on Dr. Marzluff's stated limitations and the plaintiff's vocational training, the plaintiff was able to perform alternative employment and long term disability benefits would end in May, 2003.

**9.** On May 5, 2003, the plaintiff requested the defendant to reconsider its decision and attached the following medical records:

MRI of the cervical spine dated October 9, 2002,
Copies of Dr. Marzluff's office notes dated September 25, 2002 and February 26, 2002,
A copy of Dr. Marzluff's letter to National Healthcare Resources,
A copy of a loan discharge application,
Worker's compensation authorization records.

**10.** The defendant advised the plaintiff that it had reviewed all of the evidence that the plaintiff attached to his request for reconsideration except for a February 17, 2003, loan discharge application in which Dr. Marzluff submitted that the plaintiff could not work at any job. The defendant claimed that the medical records did not support Dr. Marzluff's statement in the loan discharge application, but the defendant forwarded the matter to an appeals committee. The appeals committee consulted Dr. Dan Gerstenblitt, who is board certified in internal medicine and occupational medicine. Dr. Gerstenblitt reviewed the plaintiff's evidence and opined that the evidence demonstrated that the plaintiff could work with the following limitations: no lifting greater than 10-20 pounds, alternate sitting and standing as needed, no heavy pushing or pulling, and avoiding frequent bending of the back (at the waist). Dr. Gerstenblitt also opined that the records failed to indicate a medical condition preventing the plaintiff from working in any capacity.

**11.** On June 30, 2003, the defendant notified the plaintiff that Dr. Marzluff's statement on the loan discharge application was not supported by medical documents demonstrating that the plaintiff could not perform any occupation. The defendant advised the plaintiff of the limitations set forth by Dr. Gerstenblittt and of the defendant's conclusion that the plaintiff was able to perform alternative employment. As a result, the defendant denied the plaintiff's appeal. The plaintiff has fully exhausted remedies provided by the plan, and this matter is ready for

disposition.

## Standard of review

If a plan vests an administrator discretion to settle disputed eligibility questions, courts may only review the administrator's decision for an abuse of that discretion. Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). Such a decision is reasonable if based on a principled reasoning process and substantial evidence. Id.

The Fourth Circuit has identified other factors as relevant in determining whether a fiduciary's exercise of discretion was reasonable:

> (1) the language of the plan; (2) the purpose and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it might have.[2]

Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 342 (4th Cir. 2000).

The defendant is the plan administrator and the insurer. If a plan administrator is operating under a conflict of interest, the Court should lessen the deference normally given under the abuse of discretion standard to the extent necessary to counteract any influence resulting from the conflict. Ellis, 126 F.3d at 233.

## Conclusions of law

**A**. The plan in this case gives the defendant discretionary authority to make benefit determinations and interpret plan terms. The parties do not dispute this. The Court should not disturb the defendant's decision if reasonable. Ellis, 126 F.3d at 232.

---

[2]A conflict of interest is both a consideration that lessens the deference under the standard of review and a factor in deciding whether the defendant has abused its discretion. See Booth, 201 F.3d at 343 fn. 2.

**B.** Both parties agree that the defendant has a financial interest in the outcome of the decision. The Court, therefore, must lessen the deference given to the defendant's decision to counteract this conflict. Ellis,126 F.3d at 233.

**C.** The defendant's decision to deny benefits was based on substantial evidence.

The defendant gathered information regarding the plaintiff's occupational limitations from Dr. Marzluff and the plaintiff. Based on the limitations provided, the defendant's vocational case manager assessed the plaintiff's employment training and experience and determined that the plaintiff could perform other occupations such as ordering clerk, customer service, or front desk person. The vocational case manager's determination that the plaintiff could perform alternative jobs is reasonable and disqualifies the plaintiff from receiving disability benefits.

Dr. Gerstinblitt offered additional evidence supporting the defendant's claim determination. Dr. Gerstinblitt found similar occupational limitations as those issued by Dr. Marzluff , and Dr. Gerstinblitt opined that the plaintiff could work within these limitations. Dr. Marzluff stated in the loan discharge application that the plaintiff could not earn income in any capacity, but Dr. Marzluff neither elaborated on this statement nor updated the occupational limitations he had provided the defendant before completing the loan discharge application. See Jones v. Unum, 2003 WL 264701 (4th Cir. (Va.).

**D.** The defendant used a principled decision making process in making its determination. The defendant denied benefits based on occupational limitations provided by Dr. Marzluff and the plaintiff. The plaintiff then challenged the determination claiming that his condition had deteriorated and that he could not perform the occupations listed by the vocational case manager. The plan required objective medical findings supporting a disability claim. The plaintiff offered

a loan discharge application in which Dr. Marzluff diagnosed the plaintiff with spondylolisthesis and degenerative disc disease and stated the plaintiff could not earn income in any capacity.

The defendants responded by consulting Dr. Gerstinblitt who disagreed with Dr. Marzluff's statement in the loan discharge application and determined that the plaintiff could work within limitations. The defendant also advised the plaintiff that because Dr. Marzluff did not explain his determination on the loan discharge application that the plaintiff could not earn income in any capacity, the loan discharge application was insufficient to demonstrate that the plaintiff was totally disabled. The defendant provided the plaintiff with the methods to challenge the benefit determination and the reasons for denying the claim. The plaintiff was allowed to appeal the initial denial of benefits, and the defendant provided reasons why additional evidence provided on appeal was insufficient to alter the defendant's determination. See Bernstein v. Capital Care, Inc., 70 F.3d 783, 788 (4th Cir. 1995).

The defendant employed a principled decision making process to deny long term disability benefits, and this decision was based on substantial evidence. The Court therefore holds that the defendant did not abuse the discretion provided under the plan. This action is hereby dismissed.

**AND IT IS SO ORDERED**.

_____

January 27, 2006                             **C. WESTON HOUCK**
Charleston, South Carolina          **UNITED STATES DISTRICT JUDGE**